1
2
3
4

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| NEWPORT BUILDERS, INC., a Nevada Corporation,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>NORTH BAY CONSTRUCTION, INC., a California corporation,<br><br>　　　　Defendant. | Case No: C 09-0184 SBA<br><br>**ORDER DENYING DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>[Docket 32, 55] |

　　　　The instant diversity jurisdiction action involves a business dispute between Plaintiff, Newport Builders, Inc. ("Plaintiff"), and Defendant, North Bay Construction, Inc. ("Defendant" or "North Bay Construction").  See 28 U.S.C. § 1332.  The parties are presently before the Court on (1) Defendant's Motion to Strike Plaintiff's First Amended Complaint (Docket 32) and (2) Plaintiff's Motion to Strike Reply to Opposition (Docket 55).  Having read and considered the papers filed in connection with this matter, and being fully informed, the Court hereby DENIES the motion to strike for the reasons set forth below.  In view of this ruling, the motion to strike the reply is DENIED as moot.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed.R.Civ.P. 78(b).

## I. BACKGROUND

### A. OWNERSHIP STRUCTURE OF FOUNTAINVIEW #3 INVESTORS, LP

The underlying facts of this case are convoluted and complicated.[1]  However, they may be fairly summarized as follows.  The case arises from a state court lawsuit concerning the construction of an 800-acre residential development known as "Fountainview," located in Santa Rosa, California.  See DeAngelis v. Fountainview #3 Investors L.P., Sonoma County Super. Ct., Case No. SCV-230086, SCV 230178, SCV 236263 ("the Underlying Action").  Fountainview was developed by Marvin DeAngelis ("DeAngelis"), DeAngelis Construction, Inc., Gary Pope and DeAngelis-Pope, a general partnership.

The Fountainview development was divided into three units or phases.  Prior to construction, DeAngelis sold Unit 3 of Fountainview, consisting of 30 residential units, to an investment partnership known as Fountainview No. 3 Investors ("Fountainview Investors"). Fountainview Investors was organized as a limited partnership, with Newport Builders LP as its *general partner*.  The *limited partners* of Fountainview Investors were DeAngelis Construction and Gary Pope.

Newport Builders LP, also is a limited partnership.  Its general partner is Newport Builders, Inc., which is controlled by Gene Lenzi ("Lenzi").  Defendant North Bay Construction  originally was a limited partner of Newport Builders LP.  Specifically, Defendant had invested $500,000 in Fountainview Investors and obtained a 40 percent equity stake therein.  In exchange, it became entitled to priority in any distributions by Fountainview Investors.  John Barella and Nick Rado are the President and Vice President, respectively, of Defendant.

### B. THE UNDERLYING STATE COURT ACTION

On June 4, 2002, the limited partners of Fountainview Investors, led by DeAngelis, sued the partnership and Newport Builders LP.  Specifically, DeAngelis, DeAngelis Construction, Inc., Gary Pope (collectively "DeAngelis Plaintiffs") alleged causes of action against Newport Builders

---

[1] The Court notes that both parties have submitted extensive declarations and ancillary filings in connection with the instant motion, much of which contain inapposite information and documentation. In the future, the parties should endeavor to focus their briefs and supporting documents specifically to the issues before the Court.

- 2 -

LP and Fountainview Investors (collectively "Newport Defendants") for dissolution of partnership, account and injunctive relief ("the Underlying Action").

On July 22, 2002, the Newport Defendants filed a cross-complaint against the DeAngelis Plaintiffs for breach of contract, deceit, breach of fiduciary duty, intentional interference with prospective economic advantage, unfair business practices, disassociation of partnership and duress. The Newport Defendants also alleged a claim for professional negligence against an engineering firm, RGH.

In response to the Newport Defendants' cross-complaint, RGH filed its own cross-complaint against Defendant and others for declaratory relief, and for contribution and indemnity against the DeAngelis Plaintiffs. In turn, the DeAngelis Plaintiffs filed a cross-complaint against Defendant for indemnity and contribution.

Defendant eventually was dismissed from each of the aforementioned cross-complaints. Though no longer a party to the Underlying Action, Defendant voluntarily became involved in the settlement negotiations between the remaining parties, DeAngelis Plaintiffs and the Newport Defendants. In the course of those discussions, Defendant made an offer to Lenzi to sell its interest in Newport Builders LP for $500,000, the amount of its initial capital contribution. Lenzi claims he agreed. (Lenzi Decl. ¶ 6.) Allegedly unbeknownst to Lenzi, however, Defendant also made the same offer to the DeAngelis Plaintiffs. According to Defendant, whichever party acted first would have the deal.

On March 17, 2008, the remaining parties to the Underlying Action appeared in state court for trial, at which time it was agreed they would pursue further settlement discussions beginning the next day. (Lenzi Decl. ¶ 12.) However, before those discussions commenced, Lenzi learned that Defendant already had entered into the aforementioned deal with the DeAngelis Plaintiffs. (Id. ¶ 12.) This suit followed.

C.     **SUMMARY OF THE INSTANT ACTION**

On January 14, 2009, Plaintiff filed the instant action against Defendant North Bay Construction. The Complaint alleges six state law causes of action for: (1) breach of partnership agreement; (2) breach of the implied covenant of good faith and fair dealing; (3) breach of oral

1  contract; (4) intentional interference with prospective economic advantage; (5) disassociation of
2  North Bay from Newport Builders LP; and (6) dissolution and winding up of Newport Builders LP.
3  In response to the Complaint, Defendant has filed an anti-SLAPP motion to strike, pursuant to
4  California Code of Civil Procedure section 425.16.  The motion is predicated on the notion that the
5  conduct at issue is based on the communication of a settlement offer, which Defendant contends
6  constitutes "protected activity" for which it cannot be held liable.

7  **II.     LEGAL STANDARD**

8          In 1992, California enacted an anti-SLAPP statute, Code of Civil Procedure section 425.16,
9  to provide a procedure for a court "to dismiss at an early stage nonmeritorious litigation meant to
10 chill the valid exercise of the constitutional rights of freedom of speech and petition in connection
11 with a public issue."  Sipple v. Foundation for Nat'l Progress, 71 Cal. App. 4th 226, 235 (1999).
12 This type of nonmeritorious litigation is referred to under the acronym "SLAPP," or Strategic
13 Lawsuit Against Public Participation.  Id.  The archetypal SLAPP complaint is a "generally
14 meritless suit[ ] brought by large private interests to deter common citizens from exercising their
15 political or legal rights or to punish them for doing so."  Wilcox v. Sup. Ct., 27 Cal. App. 4th 809,
16 816 (1994).  "California enacted section 425.16 to provide a procedural remedy to resolve such
17 a suit expeditiously."  Dowling v. Zimmerman, 85 Cal. App. 4th 1400, 1414 (2001) (internal
18 quotation marks and citation omitted).

19         When a plaintiff brings a SLAPP complaint, the defendant may move to strike the
20 complaint under section 425.16.  Cal. Code of Civ. Proc. § 425.16(f).  "Analysis of an anti-SLAPP
21 motion to strike involves a two-step process."  Kearney v. Foley & Lardner, LLP, 566 F.3d 826,
22 836 (9th Cir. 2009).  First, the defendant must make an initial *prima facie* showing that plaintiff's
23 suit arises from an act in furtherance of defendant's right of petition or free speech.  Braun v.
24 Chronicle Publishing Co., 52 Cal. App. 4th 1036, 1042-43 (1997).  Second, "[i]f the court
25 determines that the defendant has met this burden, it must then determine whether the plaintiff has
26 demonstrated a probability of prevailing on the merits."  Kearney, 566 F.3d at 836-37; Damon v.
27 Ocean Hills Journalism Club, 85 Cal. App. 4th 468, 474 (2000).  If the plaintiff is unable to
28 provide the factual and legal support for the challenged cause of action, the complaint should be

- 4 -

stricken. Code Civ. P. § 425.16(b); Dowling, 85 Cal. App. 4th at 1417. In reviewing a motion under section 425.16, "the trial court is required to consider the pleadings and the supporting and opposing affidavits stating the facts upon which the liability or defense is based." Church of Scientology v. Wollersheim, 42 Cal. App. 4th 628, 646 (1996).

## III.  DISCUSSION

The threshold question presented is whether the conduct forming the basis of Plaintiff's claims constitutes "protected activity" within the meaning of section 425.16. The activities protected under the anti-SLAPP statute are: (1) written or oral statements made before a legislative, executive, or judicial proceeding; (2) *written or oral statements made in connection with an issue under consideration or review by a* legislative, executive, or *judicial body*; (3) written or oral statements made in a place open to the public or in a public forum in connection with an issue of public interest; or (4) any other conduct in furtherance of the exercise of the constitutional rights of petition or free speech in connection with a public issue or an issue of public interest. Cal.Code Civ. P. § 425.16(e). Whether a cause of action arises from protected activity depends upon its principal thrust or gravamen. In re Episcopal Church Cases, 45 Cal .4th 467, 477 (2009). "[T]he critical point is whether the plaintiff's cause of action [is] based on an act in furtherance of the defendant's right of petition or free speech." City of Cotati v. Cashman, 29 Cal. 4th 69, 78 (2002). "[A] defendant in an ordinary private dispute cannot take advantage of the anti-SLAPP statute simply because the complaint contains some references to speech or petitioning activity by the defendant." Martinez v. Metabolife Int'l, Inc., 113 Cal. App. 4th 181, 188 (2003).

Defendant argues that Plaintiff's claims are based on its role as "an active participant in the judicial proceedings in the underlying case"; to wit, Defendant's interaction with DeAngelis and Lenzi, who both allegedly solicited its assistance in resolving the remaining claims in the Underlying Action. (Mot. at 8-9.) In particular, Defendant asserts that its assistance in helping to resolve the Underlying Action is "protected activity" because it relates to settlement discussions connected to a judicial proceeding. (Id.) In support of its position, Defendant relies on Gene Thera v. Troy & Gould Prof. Corp., 171 Cal. App. 4th 901 (2009), where the California Court of Appeal

held that an attorney's communication of a settlement offer on behalf of its client, constituted "protected activity" under the anti-SLAPP statute.  Id. at 908.

In Gene Thera, Laura Bryan and others were defendants in an action filed against them by M.A.G. Capital and related entities ("MAG").  MAG was represented by the law firm Troy & Gould ("TG"), while Ms. Bryan and her co-defendants were represented by attorney Shoemaker.  TG made a settlement offer to Shoemaker in which MAG would dismiss its case against her with prejudice in exchange for Ms. Bryan's agreement to cooperate with MAG during the litigation.  In response, Bryan's co-defendants sued TG and MAG, alleging that the settlement offer was intended to create a conflict of interest so that Shoemaker could no longer represent any of them in the MAG action.  They alleged causes of action for intentional interference with contractual relations and negligence.

Respondents, TG and MAG, filed a special motion to strike the complaint as a SLAPP action, contending the causes of action asserted against them were based on protected activity, i.e., the communication of the settlement offer.  The trial court agreed and granted the motion and struck the complaint.  The Court of Appeal affirmed.  Id. at 907.  In reaching its decision, the court explained that "statements and writings made in connection with litigation" generally are covered by the anti-SLAPP statute.  Id. at 907.  Reviewing the basis of the plaintiffs' causes of action, the court then found that they were "based on TG's communication of *an offer to settle the ongoing lawsuit*, a matter connected with issues under consideration or review by a judicial body."  The court concluded that "*[a]n attorney's communication with opposing counsel on behalf of a client regarding pending litigation directly implicates the right to petition and thus is subject to a special motion to strike.*"  Id. at 908 (emphasis added, footnotes omitted).

Defendant attempts to analogize its involvement in the settlement discussions between the DeAngelis Plaintiffs and the Newport Defendants to TG's act of communicating the settlement offer on behalf of MAG.  That analogy is misplaced.  The Gene Thera court unequivocally held that the protected activity in that case was *the attorney's act of communicating a settlement offer to opposing counsel on behalf of its clients*.  No such communication occurred here.  Defendant was neither acting as legal counsel nor was it communicating a settlement offer on behalf of anyone, let

alone itself.  In addition, Defendant was no longer a party to the case since it previously had been dismissed, and thus, had no claims of its own to settle.  As such, Defendant's voluntary involvement with the DeAngelis Plaintiffs and the Newport Defendants, by definition, was not protected activity.

The record demonstrates that Defendant was merely communicating a proposed business deal, not an offer to settle its own claims.   That the Defendant's offer was made while the DeAngelis Plaintiffs and the Newport Defendants were engaged in efforts to resolve *their* dispute does not cloak Defendant's communications under the auspices of protected activity.  Any connection between Defendant and the ongoing settlement discussions between the DeAngelis Plaintiffs and the Newport Defendants was, at best, tangential to the litigation, and otherwise too attenuated to establish that Defendant was engaged in protected activity.  See Martinez v. Metabolife Internat., Inc., 113 Cal. App. 4th 181, 188 (2003) ("collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute."); see also Cohen v. Brown, 173 Cal. App. 4th 302, 316 (2009) ("That a cause of action arguably may have been triggered by protected activity does not entail that it is one arising from such.") (internal quotations and citation omitted).[2]

## IV.   CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT Defendant North Bay Construction, Inc.'s Motion to Strike Newport Builders Inc.'s First Amended Complaint (Docket 32) and Plaintiff's Motion to Strike Reply to Opposition (Docket 55) are DENIED.

IT IS SO ORDERED.

Dated: July 13, 2009

                                                                              Hon. Saundra Brown Armstrong
                                                                              United States District Judge

---

[2] Since Defendant has failed to demonstrate that the conduct forming the basis of its claims constitutes protected activity, the burden does not shift to Plaintiff to show a reasonable probability that it will succeed on the merits.  Also, Defendant's objections to evidence are moot, since this decision is not based on any of the ostensibly objectionable evidence.